IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

MATTHEW V. WISNIEWSKI and                    CASE NO.:
JACQUELINE FIGUEROA, individually
and on behalf of J.W., a minor,

      Plaintiffs,

v.

SUNSET ELEMENTARY SCHOOL and THE SCHOOL BOARD OF
MIAMI DADE COUNTY, FLORIDA,

      Defendants.
_____/

## **COMPLAINT**

COME NOW the plaintiffs, MATTHEW V. WISNIEWSKI and JACQUELINE FIGUEROA, individually and on behalf of J.W., a minor, by and through the undersigned counsel and sues SUNSET ELEMENTARY SCHOOL and THE SCHOOL BOARD OF MIAMI DADE COUNTY, FLORIDA and hereby alleges as follows:

### **PARTIES**

1. The Plaintiff, Matthew V. Wisniewski ("parent") is an individual, *sui juris*, who resides in Miami Dade County, Florida. He is the custodial parent, guardian and next of friend of J.W., a minor.

2. The Plaintiff, Jacqueline Figueroa ("parent") is an individual, *sui juris*, who resides in Miami Dade County, Florida. She is the custodial parent, guardian and next of friend of J.W., a minor who also resides in Miami Dade County, Florida.

3. The Plaintiff, J.W., is a minor who resides in Miami Dade County, Florida, and at all times relevant.

4. The Defendant, Sunset Elementary School, is an award-winning Miami Dade County Public School which contains international studies and magnet programs in French, German and Spanish. Sunset Elementary School is located within Miami Dade County, Florida. Sunset Elementary School has been designated an exemplary High Performing National Blue Ribble School for 2023 by U.S. Secretary of Education, Miguel Cardona.

5. The Defendant, SCHOOL BOARD OF MIAMI DADE COUNTY, FLORIDA, ("Board" or "District") is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Miami Dade County Public Schools ("MDCPS.")

6. The district receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

## JURISDICTION AND VENUE

7. Jurisdiction for this action vests pursuant to 42 U.S.C. § 12132 for claims brought under the Americans with Disabilities Act of 1990; 29 U.S.C. § 794, for claims brought under Section 504 of the Rehabilitation Act of 1973 and for violations of J.W.'s civil rights; and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

8. This Court's jurisdiction is based upon 28 U.S.C. § 1331.

9. Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that the school and Board reside in the judicial district and the cause of action accrued in the judicial district.

## NATURE OF CASE

10. This is an action commenced under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("section 504"), and Title II of the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12132; and their implementing federal and state regulations.

11. In this action, Plaintiffs suffered damages and now seek declaratory and injunctive relief as well as damages.

## GENERAL ALLEGATIONS

1. J.W. is an 8-year-old child with a severe peanut allergy. When exposed to peanuts or peanut dust or peanut products, J.W. suffers from anaphylaxis.

2. Anaphylaxis is a severe, life-threatening allergic reaction. It can happen within seconds of exposure to peanuts. When exposed J.W.'s breathing is interrupted. It impacts her circulatory and respiratory functioning. Exposure can lead to death.

3. In anaphylaxis, the immune system releases a flood of chemicals that can cause the body to go into shock. Blood pressure drops suddenly, and the airways narrow, blocking your breathing. The pulse may be fast and weak, and you may have a skin rash. Anaphylaxis needs to be treated right away with an injection of epinephrine. If it is not treated right away, it can be deadly.

4. J.W. carries Epinephrine on her person at all times. Epinephrine is adrenaline which is a hormone and medication used to regulate visceral functions.

5. J.W. carries an Epi-Pen around her waist at all times, including at school.

6. J.W. attends Sunset Elementary School and is in the second grade.

7. Sunset Elementary School is a public school within the Miami Dade County Public School system.

8. Sunset Elementary purports to be a "Peanut allergies/Peanut-Free School". It states the same in its student handbook. The handbook further states that "[s]chool lunchtime should be an opportunity to encourage healthy lifestyle, promote socialization that will affect early behaviors."

9. J.W. is a qualified child with a disability under all relevant statues defining "disability."

10. The Defendants have recognized J.W. as a student with a disability and the district issued J.W. a Section 504 Accommodation Plan.

11. At the start of the 2023-2024 school year, Sunset Elementary School attempted to unilaterally remove J.W. during lunch time. Sunset Elementary School further attempted to ostracize and isolate J.W. from her classmates to a "peanut free" table during lunch time whereby Assistant Principal Mendez's own admission was unoccupied at that time so that J.W would be sitting alone.

12. This decision to isolate J.W. has had a significant impact on J.W.'s social and emotional well-being. J.W. believes that she could be removed from her table during lunch based on the school's policy. This has interfered with her ability to socialize with her peers and deepened relationships with her friends. Lunchtime is one of the few times throughout the school day that students are free to converse and socialize in an unstructured manner. It is vital for children at this young age to have the opportunity to work on their communication skills, learn social norms and problem solve with their peers in real time.

13. Confused, the parents objected, as the school advertised itself as a peanut free school.

14. The school administration failed to offer any alternative accommodation or recommendations other than excluding J.W. from her classmates. Rather, the parents were advised that J.W. could sit with her classmates at her own peril.

15. In addition, despite a school-wide rule that no outside food would be brought into the school, food is often allowed into the school for birthdays and other celebrations.

16. J.W. is unable to participate in any birthday or other celebrations for fear of being exposed to peanuts or a peanut product.

17. Requests for reasonable accommodations of the unwritten school wide policy and practice to allow peanuts and peanut products into the school, were all denied.

18. The family continuously asked Sunset Elementary School for the protocols for ensuring that peanuts and peanut products were not brought into the school, but no such protocols have ever been produced.

19. Upon information and belief, there are none.

20. Sunset Elementary School drafted a Section 504 Accommodation Plan, without the parents' knowledge, input or consent. It was drafted in October 2023, but the parents were not aware of the specific plan until a physical copy of the said plan was provided on December 18, 2023.

21. Upon learning of the same, the parents asked to provide input and also asked for a nurse to be included on the planning team. Both requests were denied.

22. Sunset Elementary School represented that the plan was implemented but refused to advise of the date the plan began to be implemented. Upon information and belief, the plan was not implemented until January 17, 2024.

23. Sunset Elementary School also refused to answer basic questions like who the nursing supervisor is for the school and district and what staff members had been trained in the use of the Epi Pen and signs and symptoms of an allergic reaction.

24. The 504 plan drafted by the school provides a minimal amount of protection, but fails to include nearly all of the accommodations the parents requested and is not individualized for the needs of this student.

25. The accommodations requested by the parents were reasonable, did not impose an undue financial hardship nor were they a fundamental alteration of the program.

26. Most recently on March 18, 2024, J.W. sat across from a classmate who brought a peanut butter and jelly sandwich to school.

27. The responsibility to stay away from her classmates and other children who might have peanut butter and peanut products has fallen on the shoulders of J.W., who is just 8 years old/ Instead of focusing on her education and socialization, J.W. is worried about being exposed and having to give herself an Epi Pen injection.

28. Instead, Sunset Elementary School has been hostile, misrepresented basic facts and information, lobbed veiled threats of exposure to peanut products unless the family agreed to isolate J.W. away from her peers during lunch and was not transparent with the family that a 504 plan had been created without their participation, knowledge or consent, and then not implemented for over three months.

29. Sunset Elementary School has failed to implement even the most basic protections, which it drafted for this student. The delay in implementation also put this student at unnecessary risk.

30. J.W.'s life threatening peanut allergy was documented with Sunset Elementary School every year since she began there in kindergarten in August 2021.

31. Sunset Elementary School failed to provide the student with a 504 plan or safety plan.

32. It was only when the parents began asking for a 504 plan that one was even considered by Sunset Elementary School.

33. Instead of engaging with the family, Sunset Elementary School provided a generic, templated form that did not address the individual needs of the child.

34. When the parents began to ask questions, they were met with hostility and veiled threats from both Principal Alvarez and Assistant Principal Menendez.

35. During a meeting with the family, Principal Alvarez could not control her temper and raised her voice so much so that district staff needed to be brought into the meeting to monitor Principal Alvarez's conduct.

36. Sunset Elementary School has told the family that it will not stop staff members from bringing peanuts and peanut products into the school.

37. Despite the parent handbook stating specifically that this is a peanut allergy/peanut free school, Sunset Elementary School administrators, including Principal Alvarez and Assistant Principal Menendez have both stated that it is not a peanut free school.

38. Sunset Elementary administrators have also stated that it cannot guarantee that the cafeteria will not have cross contamination with peanuts. J.W. does not have the same access to food on campus that other students do. If she does not bring food from home, she will not have access to any safe options. One day this school year J.W. dropped her lunch on the ground at school making it inedible, but was unable eat cafeteria food due

to the potential cross contamination. On this occasion, J.W. went all day without any food, was. hungry and unable to concentrate that day at school.

39. Rather than work with the family, Sunset Elementary School said that the family could file a complaint against it and the family was told to contact the compliance office for the district.

40. Once the district became involved, it did nothing to ensure that J.W. was safe at school.

41. The failure of the school and district to have staff trained, failure to have a plan that addresses the student's individual needs, failure to have a nurse or other trained medical staff on the planning team and the failure to work with the family has placed J.W. in danger.

42. The school and the district have been deliberately indifferent to the safety of this child and the rights of the parents to be involved in the planning for their child's education.

43. Plaintiffs have engaged Langer Law, P.A. to represent them and are obligated to pay a reasonable fee for their services.

## COUNT I

## VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT
## 42 U.S.C. § 12131, *et seq.*

44. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45. Plaintiffs further allege that the actions of the Defendants are discriminatory.

46. The Defendants are recipients of federal financial assistance and are therefore subject to Title II of the ADA.

47. J.W. has a disability that substantially limits her daily life activities.

48. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1)&(2).

49. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.'

50. J.W.'s parents made reasonable requests to protect J.W. from exposure to peanuts and peanut products while at school and also made a reasonable request to have staff trained to administer the epi pen and watch for signs of an allergic reaction. These requests were denied.

51. The actions of refusing to train staff, accommodate the student and instead require J.W. to be segregated from her peers, were done with deliberate indifference to the impact that this exclusion would have on J.W.

52. The parents were also treated with hostility and a lack of transparency.

53. The district is excluding and/or discriminating against J.W. solely on the basis of her disability. As a result of the district's actions and inaction, J.W. will continue to suffer and the risk of death remains at an unacceptable high level.

54. As such, the Plaintiffs are entitled to damages for the injuries as a result of these discriminatory action.

55. J.W. has no adequate or speedy remedy at law for the district's conduct described above. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief against the Defendant is appropriate pursuant to 42 U.S.C. section 12133.

56. Plaintiffs are also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. section 12205.

**WHEREFORE**, Matthew V. Wisniewski and Jacqueline Figueroa., individually and on behalf of J.W., respectfully request this Court to declare the actions of the Defendants violate the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendant from discriminating against students with disabilities, require the Defendant to create a safety plan/504 accommodation plan that is individualized for J.W. and which includes the parents' input and input from trained medical staff; and awarding Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT II
## Claim for Relief Under Section 504 Of The Rehabilitation Act of 1973, 29 U.S.C. § 794

57. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

58. The district has and is currently providing educational services to the general public and is receiving federal financial assistance and is therefore, a covered entity within the meaning of the Rehabilitation Act.

59. J.W. has a disability that substantially limits her daily life activities.

60. J.W's parents asked for an individualized safety plan/504 accommodation plan be developed to ensure the student's safety on the Sunset Elementary school campus and for staff to be trained to administer an Epi Pen and recognize signs of an allergic reaction. These requests were denied.

61. The district has failed to provide J.W. with any reasonable accommodations by initially denying a plan and then by implementing an inadequate and generic plan. The district further discriminated against J.W. by not implementing the plan unilaterally drafted by the district endangering J.W. while at school.

62. The district is discriminating against J.W. solely on the basis of disability.

63. As a result of the district's action and inaction, the Plaintiffs have suffered and will continue to suffer extreme hardship and actual and impending irreparable harm and risk of death.

64. J.W. has no adequate or speedy remedy at law for the district's conduct described above. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief against the Defendant is appropriate pursuant to 42 U.S.C. section 12133.

65. Plaintiffs are also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

66. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiffs' rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

67. The Defendant has acted either intentionally or in deliberate disregard for the protected rights of the plaintiffs herein.

68. As a proximate result of the foregoing, Plaintiffs have actual damages.

**WHEREFORE**, Matthew V. Wisniewski and Jacqueline Figueroa., individually and on behalf of J.W., respectfully pray that this Court grant the following relief against the Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil

Procedure, stating that the Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act, permanently enjoining the Defendant from any practice, policy and/or procedure which will deny J.W. equal access to, and benefit from the Defendant's services, award compensatory damages; reasonable costs and attorneys' fees; and award any and all other relief that may be necessary and appropriate.

## COUNT III
## RETALIATION

69. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

70. Retaliation is prohibited under the ADA. 42 U.S. Code § 12203.

71. The definition of retaliation is found in the implementing regulations of the Americans with Disabilities Act at 28 CFR 36.206.

72. Plaintiffs allege that the Defendants' hostility towards them is directly related to their advocacy to protect J.W.

73. A prima facie case for retaliation consists of four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an action adverse to the plaintiff; and 4) the protected activity and the adverse action are causally connected.

74. In this case, advocating for J.W. is a protected action. The Defendants were aware of the family's advocacy and in response the Defendants created a hostile school environment and made the family feel as if they needed to leave Sunset Elementary School to feel safe.

75. The parents have suffered hostile interactions with Sunset Elementary School while they were advocating to keep J.W. safe at school.

76. Plaintiffs have suffered severe emotional distress due to Defendants' retaliatory acts.

WHEREFORE, Matthew V. Wisniewski and Jacqueline Figueroa., individually and on behalf of J.W., demand judgment against the Defendants for damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable.

## JURY DEMAND

**A TRIAL BY JURY IS DEMANDED FOR ALL ISSUES TRIABLE AS OF RIGHT BY A JURY.**

Dated this 8th day of April, 2024.

**LANGER LAW, P.A**

By: __s/ Stephanie Langer_____
Stephanie Langer, Esq.
Florida Bar No: 149720
Langer Law, P.A.
15715 S. Dixie Highway, Suite 205
Palmetto Bay, Florida 33157
T: (305) 570-0940 / F: (305) 204-9602
Email: slanger@langerlawpa.com
       admin@langerlawpa.com
*Attorneys for the Plaintiffs*