UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-21305-CIV-WILLIAMS/D'ANGELO

MATTHEW V. WISNIEWSKI and
JACQUELINE FIGUEROA, individually
and on behalf of J.W., a minor,

    Plaintiffs,

vs.

SUNSET ELEMENTARY SCHOOL and
THE SCHOOL BOARD OF
MIAMI-DADE COUNTY, FLORIDA,

    Defendants.
_____/

## REPORT AND RECOMMENDATION GRANTING IN-PART AND DENYING IN-PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants Sunset Elementary School and the School Board of Miami-Dade County, Florida's Motion to Dismiss filed on August 5, 2024 (DE 29).[1] Plaintiffs Matthew V. Wisniewski and Jacqueline Figueroa, individually and on behalf of their minor child, J.W., filed their response in opposition on August 13, 2024 (DE 30). Defendants filed their reply on August 19, 2024 (DE 31). Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Defendants' Motion to Dismiss be **GRANTED IN-PART** and **DENIED IN-PART** as further set forth below. It is further respectfully recommended that all claims against Defendant Sunset Elementary School be **DISMISSED**.

---

[1] Defendants' Motion to Dismiss was referred to the undersigned Magistrate Judge for a Report and Recommendation on November 6, 2024 (DE 33).

I.  **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Plaintiffs are the parents of J.W., who is an eight-year-old child and a second-grade student at Sunset Elementary School ("Sunset") (DE 1 at 1-2).² J.W. has a severe peanut allergy, and if she is exposed to peanuts, peanut dust, or peanut products, she may suffer from anaphylaxis, which can happen within seconds and be deadly (*id*. at 3). As a result, J.W. always carries an Epi-Pen because without it, the anaphylaxis can cause the body to go into shock, dramatically drop its blood pressure, close the body's airways, and narrow her breathing (*id.*). Plaintiffs claim that administrators at Sunset have known about J.W.'s severe peanut allergy since August 2021, when she attended kindergarten at Sunset (*id*. at 3, 7).

According to the Complaint, Sunset purports to be "a [p]eanut allergies/[p]eanut-[f]ree [s]chool" in the Student Handbook (*id*. at 4). However, outside food is often allowed into the school for birthdays and other celebrations that J.W. cannot participate in for fear of exposure (*id.* at 5). Sunset administrators allegedly told Plaintiffs that it is not a peanut-free school, and they will not stop staff members from bringing peanuts and peanut products into the school (*id.* at 7). Plaintiffs further claim that Sunset administrators stated that they cannot guarantee that the cafeteria will not have cross-contamination with peanuts, so J.W. cannot safely eat any food provided by the school (*id.*).

During the start of the 2023-2024 school year, to minimize the risk to J.W., Sunset administrators "attempted to unilaterally remove [her] during lunch time" to an unoccupied, peanut-free table, where J.W. would sit alone (*id*. at 4). Plaintiffs claim this had a significant impact on J.W.'s social and emotional well-being, because she was not able to socialize with her

---

² To avoid confusion, citations to the Complaint refer to page numbers, not paragraphs, because Plaintiffs consecutively numbered paragraphs to number eleven and then started over from number one thereafter. In other words, paragraphs one through eleven appear twice in the Complaint.

peers and friends (*id*.). Plaintiffs objected, as Sunset advertised itself as a peanut-free school (*id*.). Instead of offering an alternative accommodation, Sunset's administration told Plaintiffs that J.W. "could sit with her classmates at her own peril" (*id*. at 5).

Plaintiffs claim their requests for reasonable accommodations were all denied and initially, their request for an individualized safety plan to ensure J.W.'s safety on the Sunset campus was also denied (*id*. at 5, 10). Plaintiffs further requested that Sunset provide the protocols in place for preventing peanuts and peanut products from entering the school, but none were produced (*id*. at 5). In October 2023, Sunset allegedly drafted a Section 504 Accommodation Plan ("504 Plan"), without any knowledge or input from Plaintiffs until they received the 504 Plan on December 18, 2023 (*id*.). According to Plaintiffs, they requested the opportunity to provide input and for a nurse to be consulted, but those requests were denied (*id*.).[3] The 504 Plan was allegedly implemented on January 17, 2024 (*id*.). The 504 Plan contains five accommodations, which are monitored daily:

> Monitor those foods containing nuts not be [sic] in the classroom. Teacher will remind students to wash their hands after lunch daily and as appropriate. Wipe down table to minimize potential exposure to allergens. Training teachers/service providers on sign/systems of an allergic reaction. Notify parents of lunchroom menus via (http://nutrtion.dadeschools.net).

(DE 29-1 at 3).[4] The 504 Plan also includes the following provision: "Medication Service Epi-

---

[3] It is not entirely clear what specific accommodations Plaintiffs requested that Sunset denied, but it appears those accommodations included allowing Plaintiffs and a medical professional to provide input on the 504 Plan, functioning as a peanut-free school, and having staff trained to administer the Epi-Pen and recognize signs of an allergic reaction (DE 1 at 7, 9-10).

[4] A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). While the 504 Plan was not attached to the Complaint, it was attached to Defendants' Motion. The Complaint references the 504 Plain throughout its allegations, and the 504 Plan is central to Plaintiffs' claims. Plaintiffs did not dispute the authenticity of the 504 Plan in their reply.

Pen via Self-Administered with Supervision" (*id.* at 4). The 504 Plan purportedly does not include nearly all of Plaintiffs' requested accommodations (DE 1 at 6).

On March 18, 2024, J.W. sat across from a student who brought a peanut butter and jelly sandwich to school (*id.*). Plaintiffs claim that "[t]he responsibility to stay away from . . . other children who might have peanut butter and peanut products has fallen on the shoulders of J.W., who is just eight years old (*id.*). On another occasion, J.W. dropped her lunch on the ground and could not eat the cafeteria food at the school because of potential cross-contamination (*id.* at 7). Because J.W. does not have safe access to food at Sunset, she "went all day without any food, was. [sic] hungry and unable to concentrate that day at school" (*id*. at 7–8).

Plaintiffs claim that when they expressed their views that the 504 Plan was insufficient, they were allegedly met with "hostility and veiled threats" (*id.* at 7). Specifically, Plaintiffs assert that during a meeting to discuss J.W.'s 504 Plan, one of Sunset's principals "could not control her temper and raised her voice so much so that district staff needed to be brought into the meeting to monitor [the principal's] conduct" (*id.*). Additionally, Sunset "has been hostile, misrepresented basic facts and information, [and] lobbed veiled threats of exposure to peanut products unless the family agreed to isolate J.W. away from her peers during lunch (*id.* at 6). According to Plaintiffs, rather than working with Plaintiffs to reach a resolution, Sunset "said that the family could file a complaint against it" and "made the family feel as if they needed to leave [Sunset] to feel safe" (*id*. at 8, 12).

On April 8, 2024, Plaintiffs filed a three-count Complaint, alleging that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (2009), and Section 504 of the Rehabilitation Act, 29 U.S.C § 794, *et seq.* (2016), and that Defendants retaliated against them under the ADA (DE 1 at 8, 10, 13). For the ADA claim in Count One,

4

Plaintiffs seek a declaratory judgment that Defendants' practices, policies, and procedures violated the ADA, a permanent injunction against Defendants from discriminating against students with disabilities, an individualized accommodation plan for J.W., which includes input from Plaintiffs and trained medical staff, damages, attorney's fees, and costs (*id.* at 10).  For the Rehabilitation Act claim in Count Two, Plaintiffs seek a declaratory judgment that Defendants' practices, policies, and procedures discriminated against J.W., a permanent injunction against Defendants from any practice, policy, and procedure denying J.W. equal access to, and benefit from, Defendants' services, damages, attorney's fees, and costs (*id.* at 11–12).  For the retaliation claim in Count Three, Plaintiffs seek damages, attorney's fees, and costs (*id.* at 13).  On August 5, 2024, Defendants filed the instant Motion (DE 29).

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this "plausibility standard," a plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678 (citation omitted).  On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff."  *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## III.  DISCUSSION

Defendants contend that Plaintiffs failed to state a claim under the ADA and the Rehabilitation Act, because the Complaint lacks any allegations that Defendants intentionally discriminated against J.W. (DE 29 at 13).  Defendants argue that Plaintiffs allege no facts to show J.W. was excluded from participating in educational activities, denied educational benefits, or otherwise discriminated against (*id*. at 14).  Moreover, "Plaintiffs have affirmatively alleged that the Defendants provided reasonable accommodations in the [504 Plan] it created" and that Defendants were not required to accept Plaintiffs' proposed recommendations (*id*. at 15).  Further, there are no allegations showing Defendants' deliberate indifference that would support a claim for damages (*id.* at 13).  Defendants offer two primary arguments for dismissing Plaintiffs' retaliation claim.  First, Defendants claim that the principal's alleged hostility and veiled threats towards Plaintiffs are unactionable, as they are mere petty slights and minor annoyances (*id.* at 16-19).  Second, Defendants argue that Plaintiffs Wisniewski and Figueroa do not have standing to bring a retaliation claim, because they do not allege any injury that they suffered (*id.* at 19).

In response, Plaintiffs argue that Defendants discriminated against J.W. solely on the basis of her disability, and as a result of Defendants' actions and inaction, J.W. was at risk of severe harm due to her allergy (DE 30 at 6-7).  Specifically, Defendants did not stop students and staff members from bringing peanut products into the school and could not guarantee that the cafeteria was free from cross-contamination (*id.* at 7).  Moreover, J.W. was removed to a "peanut-free" table where she had to sit alone during lunch, segregated from her peers (*id*. at 6).  Despite Plaintiffs' purportedly reasonable requests to protect J.W. from exposure to peanuts, Plaintiffs claim that Sunset failed to have staff trained to administer the Epi-Pen and watch for signs of an allergic reaction, to have a 504 Plan that addressed J.W.'s individual needs, to have a nurse or other trained

medical staff on the planning team, and to work with the family (*id*. at 8–9). Plaintiffs maintain that the 504 Plan Sunset eventually implemented, which was drafted without their input, was "inadequate and generic" (*id*. at 10–11). Plaintiffs also contend that they alleged sufficient facts to meet the standard of deliberate indifference, because according to Plaintiffs, Sunset knew that J.W. was denied a safe learning environment and took untimely and insufficient action to help J.W. (*see id.* at 6). Finally, Plaintiffs allege that Sunset was "aware of the family's advocacy and in response the Defendants created a hostile school environment [,]" causing Plaintiffs to suffer severe emotional distress (*id*. at 12–13).

At the outset, Defendants argue that Defendant Sunset Elementary School should be dismissed, because under Florida Statute Section 1001.41(4), the School Board is the only entity that can be sued (DE 29 at 7–8). Plaintiffs "agree to the dismissal of Sunset Elementary School as a named Defendant in this matter[,]" as this action is properly brought only against Defendant the School Board of Miami-Dade County, Florida (DE 30 at 1). Accordingly, the undersigned respectfully recommends that the Court **DISMISS** all claims against Defendant Sunset Elementary School, which Plaintiffs agree is not a proper party in this case (DE 31 at 1–2).

### A. Legal Framework Under the ADA and the Rehabilitation Act

Title II of the ADA provides, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2001). Similarly, the Rehabilitation Act states, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794 (2011). The United States

Court of Appeals for the Eleventh Circuit has long held that "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases" and accordingly, analyzed claims brought under both statutes together. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *Karantsalis v. Cit of Miami Springs.*, 17 F.4th 1316, 1321 (11th Cir. 2021).

To state a discrimination claim under either the ADA or the Rehabilitation Act, a plaintiff must establish:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (citation omitted). Discrimination claims can arise under a disparate treatment theory, a failure to make reasonable accommodations theory, or both.

> Disparate treatment involves discriminatory intent and occurs when a disabled person is singled out for disadvantage because of her disability. By contrast, a failure to make reasonable accommodations claim requires no animus and occurs when a covered entity breaches its affirmative duty to reasonably accommodate the known physical or mental limitations of an otherwise qualified person.

*Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010). Moreover,

> In the ordinary course, proof of [an ADA or Rehabilitation Act] violation entitles a plaintiff only to injunctive relief. To get damages . . . a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'

*Silberman*, 927 F.3d at 1134 (citations omitted).

### B. Plaintiffs' Discrimination Claims in Counts One and Two

In this case, it appears that Plaintiffs are proceeding under a failure to provide reasonable accommodations theory, as all the cases cited by both Parties to support their respective positions discuss ADA and Rehabilitation Act claims in the context of an entity's failure to provide

8

reasonable accommodations. Further, neither Party argued in its briefing that Plaintiffs have alleged discrimination pursuant to a disparate treatment theory (*see generally* DE 29, 30, 31). While the Complaint is silent as to Plaintiff's theory of discrimination, the allegations describe Defendants' knowledge of J.W.'s severe peanut allergy, Plaintiffs' allegedly reasonable requests for accommodations, and Defendants' allegedly insufficient, untimely, and unreasonable actions (*see generally* DE 1). The Court, thus, views Plaintiffs' ADA and Rehabilitation Act claims as asserting discrimination based on Defendants' failure to provide reasonable accommodations.

### i. Failure to Provide Reasonable Accommodations

While the ADA and the Rehabilitation Act require covered entities to provide reasonable accommodations for disabled individuals, this duty is not boundless. "[A] plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). Moreover, "[a] qualified individual with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation." *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 25 (11th Cir. 2009) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997)). "An accommodation is not reasonable if it either [1] imposes undue financial and administrative burdens on a grantee or [2] requires a fundamental alteration in the nature of the program." *Id.* (quoting *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1220 (11th Cir. 2008)). "Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1298 (S.D. Fla. 2016) (citation omitted).

Defendants agree that J.W. is a qualified individual with a disability under the ADA and Rehabilitation Act, so the first element of Plaintiffs' claims is not disputed (DE 29 at 9 n.2). Rather, Defendants argue that they actively took steps to prevent J.W. from being exposed to peanuts and ensure she had equal access to the facility and educational program. Defendants maintain that Plaintiffs cannot state a claim for failure to provide reasonable accommodations simply because Defendants did not accept Plaintiffs' recommended accommodations. But, Plaintiffs allege that J.W.'s life threatening peanut allergy was known and well documented by the Sunset since 2021 (DE 1 at 7). With this knowledge of J.W.'s allergy, Defendants allegedly denied Plaintiffs' request for an individualized safety plan and did not implement any 504 Plan until January 17, 2024, which was done without Plaintiffs' input (*id*. at 5, 10).

According to Plaintiffs, instead of working with them collaboratively to minimize the risk to J.W., Defendants placed her alone at a "peanut free" table, which interfered with her ability to socialize with her peers and work on her communication skills (*id*. at 4). Further, J.W. did not have access to food on Sunset's campus, and Defendants supposedly acknowledged the risk of cross-contamination in the cafeteria (*id*. at 7-8). Plaintiffs further allege that even with Defendants' 504 Plan in place, J.W. sat across from a student who brought a peanut butter and jelly sandwich to school, which created a significant risk to J.W. (*id*. at 6). The allegedly unsafe environment persisted because Defendants allowed other parents to bring outside food for celebrations and holidays and allowed the staff to bring peanuts and peanut products to the school (*id*. at 5, 7).

The allegations are sufficient to state a claim under the ADA and the Rehabilitation Act for disability discrimination based on a failure to provide reasonable accommodations. "In the academic setting, 'reasonable accommodations' jurisprudence contemplates an interactive process between the student and school, under which both sides have a responsibility to bring the issue of

reasonable accommodations front and center." *Forbes*, 768 F. Supp. 2d at 1231. Here, the allegations in the Complaint describe Defendants' unwillingness to collaborate with Plaintiffs on the accommodations for J.W., despite Plaintiffs repeated attempts to be involved in the process. Even more, Plaintiffs claim Defendants took approximately five months to institute any real protections for J.W. beyond designating a nut-free table for her to sit at during lunch, despite knowing about J.W.'s severe allergy for years. *See L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist.*, No. 04-CIV-1381, 2009 WL 737108, at *7 (D.N.J. Mar. 17, 2009) (finding school district acted with deliberate indifference when it failed to provide an appropriate education that accommodated Plaintiff, because the district was aware of the disability but failed to timely develop and implement an appropriate educational plan). Once Defendants enacted the 504 Plan for J.W., she still experienced a high-risk incident, while sitting across from another student with a peanut butter and jelly sandwich. *See Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 210 (M.D. Pa. 2016) (finding allegations of School District's failure to comply with certain provisions of Section 504 Plan were sufficient to state a claim for disability discrimination); *Gaudino v. Stroudsburg Area Sch. Dist.*, No. 12–CIV-2159, 2013 WL 3863955, at *9-10 (M.D. Pa. July 23, 2013) (denying motion to dismiss based on a failure to comply with plaintiff's Individual Education Plan).

Ultimately, Plaintiffs have pled allegations showing that they requested reasonable accommodations for J.W., and Defendants' response was untimely, unreasonable, and insufficient. Once a plaintiff requests reasonable accommodations, "the school is required to consider the request and make a reasoned decision to grant or deny it. Because academic faculties have a special understanding about which aspects of the educational experience can be modified, a school's decision about accommodations will be upheld unless it is plainly not based on professional judgment." *Forbes*, 768 F. Supp. 2d at 1231. Whether Defendants' actions were

reasoned and based on professional judgment simply cannot be determined at the motion to dismiss stage. The Second Circuit recently stated,

> '[T]he determination of whether a particular [accommodation] is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the [accommodation] in light of the nature of the disability in question.' Indeed, the '[r]easonableness analysis is 'highly fact-specific' . . . [and] cannot be determined on the pleadings [where] the relevant factors are numerous and balancing them requires a full evidentiary record.'

*Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 99-100 (2d Cir. 2024) (citations omitted). Determinations about whether Plaintiffs' requests for specific accommodations were reasonable and whether the accommodations and the 504 Plan that Defendants provided to J.W. in lieu of Plaintiffs' requests were sufficient are inherently fact-intensive inquiries that cannot be resolved at the pleading stage. *See Kelly v. Town of Southold*, No. 21-CIV-03215, 2024 WL 4825778, at *3 (E.D.N.Y. Nov. 18, 2024) (finding "whether Plaintiffs' requested accommodation would be reasonable or fundamentally alter Defendant's [program] is 'a question of fact that cannot be resolved at the motion to dismiss stage'") (citation omitted).

The cases cited by Defendants do not support a contrary conclusion. Defendants rely heavily on *Ridley School District v. M.R.*, 680 F.3d 260, 267 (3d Cir. 2012), and *T.F. v. Fox Chapel Area School District*, 589 F. App'x 594, 596 (3d Cir. 2014). In *Ridley*, the plaintiffs filed a due process complaint in the Pennsylvania Department of Education, contending the defendant violated the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act. 680 F.3d at 267. A hearing officer reviewed documentary evidence and found that the defendant violated the IDEA and the Rehabilitation Act and awarded the plaintiffs compensatory education, reimbursement of tuition, and transportation expenses. *Id.* The defendant petitioned for review, which was later removed to federal court, and the district court granted judgment in the defendant's favor based on the administrative record, which was later affirmed on appeal. *Id.* at 267-83.

Similarly, in *T.F.*, the plaintiff filed a request for a due process hearing in front of the Pennsylvania Department of Education. 589 F. App'x at 596. After four hearings, the Department of Education found that the defendant met its educational obligations and did not discriminate against the plaintiff. *Id.* at 598. On review, the district court granted summary judgment in the defendant's favor, which was subsequently affirmed on appeal. *Id.* at 598-601. Here, unlike *Ridley* and *T.F.*, there has not been any administrative hearings, and there is no fully developed administrative record on which the Court can base detailed factual findings. Overall, Plaintiffs have offered sufficient allegations to state a claim for discrimination under the ADA and the Rehabilitation Act by asserting that Defendants failed to provide reasonable accommodations for J.W.

###### ii. Compensatory Damages

To recover compensatory damages under the ADA and the Rehabilitation Act, as Plaintiffs request here, "a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (citing *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." *Id.* "'Deliberate indifference'. . . is an 'exacting standard,'" which "requires proof that 'the defendant knew that harm to a federally protected right was substantially likely. . . and failed to act on that likelihood.'" *Silberman*, 927 F.3d at 1134 (citation omitted); *see also McCullum*, 768 F.3d at 1147 ("[Deliberate indifference] requires showing more than gross negligence . . . ."). "The plaintiff must demonstrate that an 'official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf' had 'actual knowledge' of discrimination in the entity's programs and failed to adequately respond." *Silberman*, 927 F.3d at 1134 (citations omitted and cleaned up). "To qualify,

13

that 'official' must be high enough up the chain-of-command that his, or her, acts constitute an official decision by the entity not to remedy the misconduct." *Id*. (citation omitted).

In this case, deliberate indifference requires more than simply Defendants' negligence, or even gross negligence, in failing to provide reasonable accommodations for J.W. Plaintiffs allege that since 2021, Defendants knew and documented J.W.'s peanut allergy (DE 1 at 7). Plaintiffs further claim that Sunset's principals "stated that. . . [Sunset] is not a peanut free school," even though Sunset advertised itself as a peanut-free school in the Student Handbook (*id*.). With actual knowledge of J.W.'s peanut allergy, Defendants purportedly developed the 504 Plan without Plaintiffs' input (*id.* at 5).[5] Moreover, even after implementing the 504 Plan, J.W. had an incident where she was exposed to peanuts after sitting across from a student with a peanut butter and jelly sandwich at lunch, and J.W. is at continuous risk due to Sunset permitting parents to bring food for celebrations and holidays (*id.* at 5–6). According to Plaintiffs, J.W. also had no food available to her at school, as the cafeteria was not free of cross-contamination with peanuts and peanut products (*id.* at 7–8). Instead of working with Plaintiffs or taking reasonable corrective actions, Plaintiffs allege that Defendants said "the family could file a complaint against it" (*id*.). At this early stage of the litigation, Plaintiffs adequately alleged facts to show deliberate indifference and claim compensatory damages under the ADA and the Rehabilitation Act. *See Snell v. N. Thurston Sch. Dist.*, No. 13-CIV-5786, 2015 WL 6396092, at *5 (W.D. Wash. Oct. 21, 2015) (stating a jury could find deliberate indifference where the school district did not act to address student's medical

---

[5] In this case, Defendants do not challenge that Sunset's principals had actual knowledge of J.W.'s severe peanut allergy and were high enough in the chain-of-command to address accommodations that could be provided to J.W.

need even though school district offered an alternative accommodation). As such, it is respectfully recommended that Defendants' Motion to Dismiss be **DENIED** as to Counts One and Two.

### B. Plaintiffs' Claims for Retaliation under the ADA in Count Three

Defendants argue that Plaintiffs' retaliation claim fails for several reasons. First, Defendants assert that Plaintiffs do not have standing to bring a retaliation claim, because Plaintiffs Wisniewski and Figueroa have not alleged any injury to themselves (DE 29 at 16).[6] Next, Defendants argue that Plaintiffs have not stated a claim, because they have not sufficiently alleged an adverse action (*id.*). Defendants also point out that damages for emotional distress cannot be recovered under the ADA and the Rehabilitation Act (*id.*).[7]

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) he participated in a statutorily protected activity or expression; (2) he suffered an adverse action; and (3) there was a causal link between the adverse action and the protected activity or expression." *Williams v. Alabama Dep't of Indus. Rels.*, 684 F. App'x 888, 894 (11th Cir. 2017) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)). Courts "construe the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the adverse action are not completely unrelated." *Id*. "A plaintiff satisfies this element (for the purposes of making a

---

[6] Notably, Defendants only cite generic case law on the requirements for Article III Standing in support of this argument. Yet, like the other counts in the Complaint, Count Three is brought by J.W.'s parents, individually and on behalf of J.W. Defendants do not point to any specific cases demonstrating that a minor child's parents do not have Article III standing to bring a retaliation claim under the ADA.

[7] The Court agrees that emotional distress damages are not available under the ADA. The United States Supreme Court held that "emotional distress damages are not recoverable" under the Rehabilitation Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). The Eleventh Circuit expanded *Cummings* to Title II of the ADA. *See A.W. by & Through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1314 (11th Cir. 2024), *cert. denied sub nom. A. W. v. Coweta Cty. Sch. Sys.*, No. 24-523, 2025 WL 76482 (U.S. Jan. 13, 2025) ("[E]motional distress damages are not recoverable under Title II, which provides the same 'remedies, procedures, and rights' as the Rehabilitation Act." (citing 42 U.S.C. § 12133 (1990))).

prima facie case) if he provides evidence that (1) the defendant was aware of his protected expression or activity; and (2) there was a 'close temporal proximity' between this awareness and the adverse action." *Id.*

Plaintiffs do not allege sufficient facts to establish a retaliation claim. In the Complaint, Plaintiffs claim that they suffered "hostile interactions" and "feel as if they needed to leave Sunset Elementary School to feel safe," which are not sufficient to constitute adverse action (DE 1 at 12-13).[8] *See Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-CIV-23859, 2015 WL 2374594, at *13 (S.D. Fla. May 18, 2015) ("[T]he Court concludes that the fact Max and Carlos Alberto were 'extremely angry' at the plaintiff, berated him and yelled at him are not adverse actions as a matter of law."); *Swindle v. Jefferson Cnty. Comm'n*, 593 F. App'x 919, 927 (11th Cir. 2014) ("Normally petty slights, minor annoyances, and simple lack of good manners are not likely to deter a victim of discrimination from complaining to the EEOC and thus do not constitute retaliation." (quotation and citation omitted)). Additionally, Plaintiffs allege that Sunset denied their requests for reasonable accommodations, refused to answer their questions, failed to implement even the most basic protections, and failed to train staff. Plaintiffs argue that this conduct, which also supports their claims for Defendants' failure to provide reasonable accommodations, demonstrates Defendants' adverse actions (*id.* at 5-6). Allegations that largely amount to Defendants' denial of Plaintiffs' request for reasonable accommodations are insufficient to constitute adverse action. *See Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x 860, 869 (11th Cir. 2012) ("We have refused to address a plaintiff's retaliation claims based on an employer's refusal to accommodate her where the described acts 'relate directly to her 'reasonable accommodation' discrimination claim, not her

---

[8] Plaintiffs' allegation that Defendants told them they "should go to a different school" is not contained in the Complaint and therefore, not considered (*see generally* DE 1).

16

retaliation claim.'") (citation omitted); *McClain v. Tenax Corp.*, 304 F. Supp. 3d 1195, 1206 (S.D. Ala. 2018) ("[T]he mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim."); *Sacks v. Bd. of Educ. of Baltimore Cnty.*, No. 21-CIV-968, 2021 WL 5233752, at *6 (D. Md. Nov. 9, 2021) ("[T]hough the denial of a request for accommodation may form the basis for a retaliation claim, such a denial does not by itself support a claim of retaliation."); *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (finding the allegations that are "the subject of plaintiff's failure to accommodate claim . . . do[] not supply grounds for a separate retaliation claim.").

Moreover, the causal link between the adverse action and the protected activity is not sufficiently pled in the Compliant. For example, the Complaint does not allege when Plaintiffs made their request for reasonable accommodations.[9] While the request constituted protected activity, *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016), there must also be allegations to support a causal link between Defendants' awareness of the protected activity and the alleged adverse action, which can be shown circumstantially through close temporal proximity. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence . . . of a causal connection."). Since the Complaint's allegations do not establish what, if any, temporal relationship exists between the protected activity and the alleged adverse action, Plaintiffs do not adequately allege that Defendants' adverse actions were causally related to the protected activity. *See Hargett v. Fla.*

---

[9] Plaintiffs allege that Defendants knew about J.W.'s allergy since 2021. The Complaint does not state when after Defendants learned about J.W.'s peanut allergy that Plaintiffs first made a request for accommodations. In other words, the allegations do not establish whether the request for accommodations was made in 2021, 2022, 2023, or some other time.

*Atl. Univ. Bd. of Trustees*, No. 15-CIV-80349, 2015 WL 13639189, at *4 (S.D. Fla. Dec. 15, 2015) (finding plaintiff failed to state a claim for retaliation when she did not sufficiently allege the temporal relationship between the adverse action and the protected expression to establish causation). In sum, Plaintiffs have not sufficiently alleged adverse actions by Defendants or that those adverse actions were causally related to the protected activity, and without more, Plaintiffs do not state a claim. Therefore, it is respectfully recommended that Count Three be **DISMISSED**.

### IV.   CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendant the School Board of Miami-Dade County, Florida's Motion to Dismiss be **GRANTED IN-PART** and **DENIED IN-PART** as set forth above. Specifically, the undersigned respectfully recommends that the Motion to Dismiss be **DENIED** as to Counts One and Two and **GRANTED** as to the retaliation claim in Count Three. Further, it is respectfully recommended that the Court **DISMISS** Defendant Sunset Elementary School as a party to this action.

### V.   OBJECTIONS

The Parties will have fourteen (14) days from this Report and Recommendations to file written objections, if any, with the Honorable Kathleen M. Williams, United States District Judge. Failure to file objections timely shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain

error, if necessary, in the interest of justice. *See* 28 U.S.C. § 636(b)(1)*; Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 4th day of February, 2025.

                                                                                                         ELLEN F. D'ANGELO
                                                                                                         UNITED STATES MAGISTRATE JUDGE

cc:       All Counsel of Record